UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| HUGHES SOCOL PIERS RESNICK | ) | |
| & DYM, LTD. and COHEN | ) | |
| LAW GROUP, P.C., | ) | |
| | ) | |
| Petitioners, | ) | No. 18 C 2114 |
| | ) | Hon. Marvin E. Aspen |
| v. | ) | |
| | ) | |
| G3 ANALYTICS, LLC and KEN ELDER, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Currently pending is Petitioners Hughes Socol Piers Resnick & Dym, Ltd. ("Hughes") and Cohen Law Group, P.C.'s ("Cohen Law") amended petition pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9 to confirm an arbitration award entered in their favor regarding unpaid legal fees. (Am. Pet. (Dkt. No. 9); Award (Dkt. No. 9–1).) For the reasons discussed below, we hereby grant Petitioners' amended petition, and enter judgment that Respondents Kenneth Elder and G3 Analytics are liable for $233,597.26 in attorneys' fees to Petitioners Hughes and Cohen Law.

## BACKGROUND

### I. RELATIONSHIP BETWEEN THE PARTIES

The following facts are uncontested and are generally drawn from the Award and amended petition. Petitioners are law firms with principal places of business in Cook County, Illinois specializing in the prosecution of *qui tam* litigation, which involves filing claims under state and federal false claims statutes in the hopes of receiving a portion of the recovery. (Award

at PageID #:39; Am. Pet. ¶ 1.) *See G3 Analytics, LLC v. Hughes Socol Piers Resnick & Dym Ltd.*, 2016 IL App (1st) 160369 ¶ 3, 67 N.E.3d 940, 942; *appeal denied*, 80 N.E.3d 2 (Ill. 2017). At all relevant times, Petitioners have had an agreement to work jointly as "Whistleblower Advocates" in false claims and *qui tam* cases. (Award at PageID #:39).) Beginning in December 2013, Respondent Kenneth Elder engaged in discussions with Petitioners to represent him and G3 Analytics, LLC ("G3"), a limited liability company owned by Elder, to pursue certain *qui tam* actions related to failure to surrender unclaimed property as required by state law. (*Id.*) Respondents are "professional *qui tam* plaintiffs," also known as relators, who "identify[], develop[], and fil[e] claims . . . using federal and state False Claims statutes." (Am. Pet. ¶ 2.) The parties ultimately entered into an Engagement and Fee Agreement in March 2014 ("the Agreement") governing the terms of Petitioners' representation of Respondents in the contemplated unclaimed property litigation. (Award at PageID #:39, 41; Agreement (Dkt. No. 9–2).)

As relevant here, the Agreement sets forth an Attorneys' Fees and Costs section that generally states that the Petitioners will work on a "contingency fee basis," unless Respondents terminate representation or withdraw as set forth in paragraphs 8 and 9 of the agreement. (Agreement ¶ 4.) Paragraph 9 of the agreement, entitled the Client Withdrawal clause, states:

> In the event our Law Firms [Petitioners] are willing to proceed with the Unclaimed Property Litigation and you [Respondents] determine to withdraw, you agree to pay our Law Firms for all costs and expenses we have incurred, plus fees incurred to the date of your withdrawal . . . .

(*Id.* ¶ 9.) Finally, the Agreement contains an Alternative Dispute Resolution ("ADR") provision stating:

> Any disputes relating to this Agreement . . . will be resolved by alternate dispute resolution. Alternative dispute resolution means that you and our Law Firms agree to submit all disputes to an independent mediator mutually agreed upon. . . .

2

> In the event the parties are unable to resolve their disputes through mediation, the parties agree that the mediator shall require the parties to submit their disputes to an independent arbitrator selected by the mediator. The mediator will have the right to appoint himself as arbitrator in that proceeding. The parties shall be bound by the decision of the arbitrator and such decision shall be final and not subject to review except as to the issue of malfeasance or bias on the part of the arbitrator.

(*Id.* ¶ 22.)

At all relevant times, Respondents were parties to a consulting agreement with a third party, Total Assets Recovery System ("TARS"), "an organization of attorneys that were relators in *qui tam* actions regarding unremitted life insurance proceeds." (Award at PageID #:39.) The parties were concerned about the "effect of the TARS consulting agreement on the potential litigation under discussion," and the parties agreed that TARS' involvement in the contemplated unclaimed property filings would cause an "ethical conflict" and would "bankrupt the litigation." (*Id*. at PageID #:41.) The parties initially agreed that TARS had no claim to the litigation contemplated by the parties. (*Id*.)

Accordingly, for a number of months in 2014, Petitioners investigated and worked on Respondents' claims and were ready to file lawsuits in Illinois and Delaware by June 2014. (*Id.*)[1] Before filing, however, Petitioners decided to verify that TARS would not assert an interest in the litigation. (*Id.*) In July 2014, based on discussions with TARS, Elder informed Petitioners that TARS "insisted on asserting its interest" in the anticipated unclaimed property cases. (*Id.* at PageID #:42.) Petitioners requested Elder to arrange a meeting with TARS to try to establish a way to advance the *qui tam* claims; Elder never acted upon the request.

---

[1] Petitioners represent they "invested hundreds of hours of time and substantial resources" in investigating Respondents' potential claims. (Am. Pet. ¶ 9.)

3

(*Id*. at PageID #:46.)  At that time, Steven Cohen "requested a written waiver from TARS before filing the contemplated action." (*Id.* at PageID #:39, 41.)

Apparently concerned about TARS' interference, Respondents notified Petitioners by email on August 13, 2014 that they were "exercising [their] option to withdraw (item #9) from our engagement and fee agreement." (*Id.*; Resp. (Dkt. No. 12) at 5 ("Elder chose not to pay off TARS or proceed with the litigation.").)  On September 14, 2014, Petitioners sent Respondents a bill for $233,597.26 in legal expenses, which remains unpaid. (*Id.*)

## II. PROCEDURAL HISTORY

When Respondents did not pay the $233,597.26 invoice, Petitioners demanded mediation pursuant to the ADR clause of the Agreement. (*Id.*)  In response, on April 6, 2015, Respondents filed suit in the Circuit Court of Cook County seeking a declaratory judgment that the Agreement was unenforceable. (*Id.* at PageID #:42.)  *See also G3 Analytics, LLC*, 2016 IL App (1st) 160369 ¶ 5, 367 N.E.3d at 943.  Respondents contended that (1) the Agreement was not binding because it was negotiated without an "arm's-length bargaining process," (2) the Agreement "became unenforceable" when Respondents "terminated [Petitioners'] representation," (3) the ADR clause in the Agreement "violated public policy," and (4) the ADR clause "became unenforceable by allowing the mediator to appoint him or herself as arbitrator." *Id.*  The trial court ultimately dismissed the complaint and compelled arbitration, and the Appellate Court of Illinois affirmed. *Id.*, 2016 IL App (1st) 160369 ¶¶ 8–9, 67 N.E.3d at 944–45.

The parties then held an unsuccessful mediation pursuant to the terms of the Agreement, and proceeded to arbitration, which occurred on September 19 and 20, 2017 before the Arbitrator, retired Judge Susan Zwick. (Award at PageID #:38.)  The arbitration included

4

discovery, two days of evidentiary hearings, and post-hearing briefing. (*Id.*) On December 21, 2017, the Arbitrator issued the Award, finding that Petitioners were entitled to recover $233,597.26 in attorneys' fees and costs from Respondents based on paragraph 9 of the Agreement. (*Id*. at PageID #:46–47.) In issuing the Award, the arbitrator considered and rejected Respondents' arguments that the Agreement was unenforceable based on alleged violations of the Illinois Rules of Professional Conduct. (*Id.* at Page ID #:42–45 (outlining Respondents' arguments that the Agreement violated Illinois Rules of Professional Conduct 1.5(a), 1.5(e), and 1.8).)

On April 19, 2018,[2] Petitioners filed an amended petition to confirm the Award pursuant to § 9 of the FAA.[3] Petitioners claim that "Respondents have refused to comply with the arbitrator's Award," and request an order confirming the $233,597.26 Award along with a judgment "in conformity with that Order." (Am. Pet. ¶¶ 14, 16.) In response, Respondents argue the Award "is against clear public policy and cannot be enforced," because Petitioners allegedly "coerce[d]" Respondents, their clients, in violation of the Rules of Professional Conduct. (Resp. at 1, 10–14 (citing Ill. R. of Prof'l Conduct 1.2(a), 1.3, 1.5(b)–(c), and 1.8(b)).) Respondents request we conduct a de novo review to determine "whether the contractual award as interpreted by the arbitrator violates some explicit public policy." (Resp. at 9.) Alternately, Respondents urge us to deny $51,595.00 of the award owed to Cohen Law specifically.

---

[2] Petitioners initially filed their petition to confirm the award on March 22, 2018. (Dkt. No. 1.)

[3] The FAA does not grant federal courts subject matter jurisdiction; instead, there must be an independent basis of jurisdiction over each dispute. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582, 128 S. Ct. 1396, 1402 (2008); *Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir. 2003); *Arbitration*, Alan Wright et. al, 13D Fed. Prac. & Proc. Juris. § 3569 (3d ed.). In this case, we have diversity jurisdiction pursuant to 28 U.S.C. § 1332 over the petition. (Am. Pet. ¶¶ 6, 13; Dkt. Nos. 22–24 (establishing diversity of citizenship).)

Respondents claim Cohen Law engaged in "egregious client coercion" when Steven Cohen represented that Cohen Law would not initiate litigation until Respondents received a written release from TARS, which Respondents argue would have cost a significant amount of money and put Respondents "over a barrel." (*Id*. at 2, 5, 14–15 (calling Cohen's written waiver request to be a "threat" that constituted "coercion against respondents to an even higher degree").) Petitioners argue that Respondents are time-barred from challenging the enforceability of the Award pursuant to the FAA, 9 U.S.C. § 12. (Reply (Dkt. No. 13.) at 3.)

## LEGAL STANDARD

The FAA "governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts" and generally "creates a strong presumption in favor of arbitration." *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995); *see also KPMG LLP v. Cocchi*, 565 U.S. 18, 21, 132 S. Ct. 23, 25 (2011) ("The Federal Arbitration Act reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'") (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 631, 105 S. Ct. 3346, 3356 (1985)). Congress enacted the FAA to overcome the "judiciary's longstanding refusal to enforce agreements to arbitrate." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474, 109 S. Ct. 1248, 1253 (1989) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20, 105 S. Ct. 1238, 1242 (1985).) Its passage "was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered," and to encourage "efficient and speedy dispute resolution." *Byrd*, 470 U.S. at 220, 105 S. Ct. at 1242 (citing H.R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924)); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).

The court's review of an arbitrator's award is extremely limited. *See Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563 (7th Cir. 2008) ("The grounds for overturning an arbitration award are extremely limited."); *Yasuda Fire & Marine Ins. Co. of Europe, Ltd. v. Cont'l Cas. Co.*, 37 F.3d 345, 349 (7th Cir. 1994). "Generally, a court will set aside an arbitration award only in 'very unusual circumstances,' . . . and confirmation is 'usually routine or summary.'" *Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 692 (7th Cir. 2004) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S. Ct. 1920, 1923 (1995); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1288 (11th Cir. 2002)). "[T]hinly veiled attempts to obtain appellate review of the arbitrator's decision . . . [are] not permitted under the FAA. Factual or legal errors by arbitrators—even clear or gross errors—do not authorize courts to annul awards." *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995) (internal citations omitted); *see also Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1025 (7th Cir. 2013) (refusing to overturn an award even if the "arbitrator committed serious error, or the decision is incorrect or even whacky") (internal citation omitted); *Halim*, 516 F.3d at 563 ("Factual or legal error, no matter how gross, is insufficient to support overturning an arbitration award.").

## ANALYSIS

### I. PETITIONERS MEET § 9 REQUIREMENTS FOR CONFIRMATION

Petitioners seek an order confirming the Award in their favor under § 9 of the FAA. (Am. Pet. ¶¶ 3–5.) Pursuant to § 9, "at any time within one year after the award is made any party to the arbitration may apply to the court . . . for an order confirming the award . . . and thereupon the court must grant such an order unless the award is vacated, modified, or corrected

7

as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9.[4] Should a party wish to file a "motion to vacate, modify, or correct an award," it must do so "within three months after the award is filed or delivered." *Id.* § 12. If the parties do not specify a court in the arbitration agreement for award confirmation, the petition for confirmation "may be made to the United States court in and for the district within which such award was made." *Id.* § 9.

Here, Petitioners filed their petition well within a year of the December 21, 2017 issuance of the Award by the Arbitrator. Furthermore, the parties did not specify a court in the Agreement, and Petitioners properly filed this action in the district where the Award was made, Chicago, Illinois. (*See* Agreement ¶ 22 ("The decision of the arbitrator may be enforced in any court of competent jurisdiction.").) By statute, we accordingly "must grant" the present petition unless the award has been vacated, modified, or corrected under §§ 10 and 11 of the FAA. 9 U.S.C. § 9; s*ee Zurich Am. Ins. Co. v. Staffing Concepts Int'l, Inc*., No. 14 C 3454, 2015 WL 4509730, at *2 (N.D. Ill. July 23, 2015) (clarifying that a court must enter judgment upon the award pursuant to § 9 "[i]f a petition is timely submitted in a proper venue with jurisdiction, . . . notwithstanding Sections 10 and 11"); *see also Hall St. Assocs., L.L.C.*,

---

[4] Section 10 of the FAA provides a court may vacate an award if (1) "the award was procured by corruption, fraud, or undue means"; (2) "there was evident partiality or corruption in the arbitrators"; (3) "the arbitrators were guilty of misconduct in refusing to postpone the hearing . . . or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior" that prejudiced a party's rights; or (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

Section 11 provides three grounds for modifying or correcting an award to "effect the intent" of and "promote justice" between the parties: (1) when there was "an evident material miscalculation of figures or an evident material mistake in the description" of a person, thing, or property that the award refers to; (2) when the arbitrator "ha[s] awarded upon a matter not submitted to them"; or (3) when the "award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11.

8

552 U.S. at 587, 128 S. Ct. at 1405) (explaining § 9's "provision for judicial confirmation carries no hint of flexibility"). As Respondents have not challenged the Award pursuant to §§ 10 or 11 and have missed the time window to do so, we find Petitioners have met the requirements of § 9 and confirm the Award.

## II. PUBLIC POLICY CHALLENGE

Respondents nevertheless argue that public policy concerns pursuant to § 2 of the FAA preclude the confirmation of the arbitration award. (Resp. at 1; Surreply (Dkt. No. 15–1).) Respondents allege Petitioners "coerce[d] [their] client to take an action to improve profitability of [a] contingent case, under the threat that otherwise the contingency counsel will refuse to file the case and charge the client $233,000 in hourly fees." (Resp. at 1.) Specifically, Respondents suggest that Petitioners required they meet with a third party, TARS, and apparently wanted Respondents to pay TARS a sum of money to waive their interest in the contemplated litigation. (*Id.*) Respondents argue this "coercion against a client violates five separate Illinois Rules of Professional Conduct," specifically Rules 1.2(a), 1.3, 1.5(b)–(c), and 1.8(b). (*Id.* at 1, 9–14.) As the Rules of Professional Conduct have the force of law, Respondents argue Petitioners' actions thus go against "clear public policy" and render the Award of legal fees unenforceable.[5] (*Id.* at 1.) Respondents claim we should conduct a de novo review of the record and decide whether the Award is contrary to public policy based on § 2 of the FAA. (*Id.* at 7–8.)

---

[5] In their surreply, Respondents admit that they waived arguments pursuant to Rules 1.3 and 1.5(b)–(c), as these arguments were not raised before the Arbitrator. (Surreply at 6.) *See Ganton Techs., Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W., Local 627*, 358 F.3d 459, 462 (7th Cir. 2004) ("The failure to pose an available argument to the arbitrator waives that argument in collateral proceedings to enforce or vacate the arbitration award."). However, Respondents claim that they Rules 1.2(a) and 1.8(b) alone "still render the award illegal and against public policy." (Surreply at 6.)

9

Section 2 allows courts to refuse to enforce arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2. Respondents do not assert their public policy arguments fall under the §§ 10 or 11 grounds for vacation or amendment of an award and admit §§ 10 and 11 "do not mention public policy at all." (Resp. at 8.) Instead, they represent that challenges to an arbitration award under § 2 should be considered a "prerequisite" to enforcement under § 9. (Surreply at 4.)

In reply to Respondents' public policy argument, Petitioners argue that Respondents are barred from challenging the validity of the Award based on public policy because the three-month statute of limitations period under § 12 expired in March 2018, months before Respondents raised their present protestations about the validity of the Award itself. (Reply at 2 (Dkt. No. 13) ("The Award has not been vacated, modified or corrected, and it is too late to do so now.").) Citing our limited scope of review at this stage, Petitioners further assert that Respondents cannot rely on § 2 of the FAA to argue against confirmation pursuant to § 9, as §§ 10 and 11 of the FAA provide the only grounds upon which the Court may vacate or modify the Award. (*Id*. at 4 (citing 9 U.S.C. § 9 (requiring the court to enter an order confirming an award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.")).) Petitioners also point out that this is the third time Respondents have attempted to void the Agreement and avoid liability for the legal fees at issue, as they have raised this argument about the Agreement's unenforceability to the Cook County Circuit Court, the Illinois Appellate Court,[6] and to the Arbitrator. (Reply at 7 (indicating that the Arbitrator found the

---

[6] Further, Respondents petitioned the Illinois Supreme Court for leave to appeal the appellate court decision, but their petition was denied. *G3 Analytics, LLC v. Hughes Socol Piers Resnick & Dym, Ltd*., 80 N.E.3d 2 (Ill. 2017).

Agreement was "not violative of public policy, and is enforceable") (emphasis removed) (citing Award at PageID #:45)).)

We agree with Petitioners that Respondents cannot avoid confirmation of the Award based on public policy concerns. First, § 12 of the FAA clearly requires any party wishing to "vacate, modify, or correct an award" to serve notice of that motion "within three months after the award is filed or delivered." 9 U.S.C. § 12. The parties do not contest that Respondents did not file any motion to vacate, modify, or correct the Award within the three-month window. Considering the Award was issued on December 21, 2017, the three-month limitations period has long since expired, and Respondents can no longer challenge the enforceability of the award.

Respondents argue that public policy arguments under § 2 have no time limits because public policy grounds are not mentioned in §§ 10 and 11. They claim public policy arguments can be raised at any time as a "prerequisite" to confirmation of an arbitration award. (*See* Surreply at 4–6 ("Illegal awards do not get more legal with the passage of time.").) Section 12, however, does not only apply to motions to vacate or modify pursuant to §§ 10 and 11. Instead, the language of § 12 is broad and applies to *any* "motion to vacate, modify, or correct an award" under the FAA, including defenses raised against petitions to confirm awards. *See Cigna Ins. Co. v. Huddleston*, 986 F.2d 1418 (5th Cir. 1993) (finding § 12 barred respondent's argument that an award could not be enforced due to fraud after the three-month limitations period had expired); *Federated Rural Elec. Ins. Exch. v. Nationwide Mut. Ins. Co.*, 134 F. Supp. 2d 923, 932–33 (S.D. Ohio 2001) (concluding § 12's three-month period barred arguments that an award constituted "manifest disregard of law"). Accordingly, merely seeking relief from enforcement under § 2 does not exempt a party from the same three-month window.

Beyond being inconsistent with the statutory text, allowing for challenges under § 2 at any time would frustrate the core purpose of the FAA, which is to provide finality and prompt enforcement of arbitration awards. *Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Co.*, 628 F.2d 1023, 1027 (7th Cir. 1980) ("[T]he purpose of the short periods prescribed in the federal . . . arbitration statutes for moving courts to vacate an award is to accord the arbitration award finality in a timely fashion."). Respondents have no explanation for why they did not seek relief from the Award in the requisite period, and indeed previously sought to vacate the Agreement in state court and during the argument based on public policy to no avail. *See id.* ("If the defendant's defenses were of such vital importance to it, the defendant nevertheless had an opportunity to raise them in the manner contemplated by statute."). Furthermore, the cases Respondents cite regarding time limits are inapposite to the argument that § 2 arguments have no limitations period; Respondents cite no cases in support of their argument that challenges to the enforcement of an arbitration award under § 2 can be brought at any time after the entry of an award. (*See* Surreply at 5–6 (citing *Epic Sys. Corp.*,138 S. Ct. at 1620 (considering arguments presented in a motion to compel arbitration); *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 760, 103 S. Ct. 2177, 2180 (1983) (evaluating parties seeking an injunction prohibiting arbitration before an arbitration had occurred); *Titan Tire Corp. of Freeport v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 734 F.3d 708, 716 (7th Cir. 2013) (considering a timely-filed petition to vacate an arbitration award)).) We thus find Respondents' arguments in opposition to confirmation based on public policy grounds to be time-barred under § 12.

Even if Respondents' § 2 argument was timely, Respondents cannot raise a public policy challenge to the Agreement at issue. Courts have consistently held public policy arguments against enforcement pursuant to § 2 apply only to collective bargaining agreements. *Hyatt Franchising, L.L.C. v. Shen Zhen New World I, LLC*, No. 16 C 8306, 2017 WL 1397553, at *7 (N.D. Ill. Apr. 19, 2017) (slip. op), *aff'd*, 876 F.3d 900 (7th Cir. 2017) (finding public policy argument could not be raised to "overturn a commercial arbitration award"); *see also Titan Tire*, 734 F.3d at 716 ("[T]he Supreme Court has made clear that a reviewing court should vacate an arbitration award if the arbitrator's interpretation of the collective bargaining agreement was 'contrary to public policy.'") (citing *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62, 121 S. Ct. 462, 467 (2000)); *Nano Gas Techs., Inc. v. Roe*, No. 17 C 1738, 2017 WL 5462958, at *4 (N.D. Ill. Nov. 14, 2017) (slip op.), *appeal dismissed*, No. 18–1079, 2018 WL 3373487 (7th Cir. Mar. 19, 2018) (declining to review arbitration agreement on public policy grounds as no collective bargaining agreement was involved in the dispute). Here, the parties dispute a contract between law firms and clients; no collective bargaining agreement is involved in this case, and the public policy argument cannot serve as grounds to avoid confirmation of the Award.

Further, the public policy grounds cannot be used to challenge the instant Award because no third parties are affected by the Award. As explained by the Seventh Circuit, the public policy exception against enforcement of an arbitration award aims to protect third parties:

> [T]he sort of "public policy" that judges may use to annul an award is policy designed to protect the public against the parties to the arbitration. . . . [I]n a contest between a truck driver and an employer, an arbitrator could not conclude that a driver whose license has been revoked can continue to drive a truck. The parties cannot use arbitration to get around rules designed for the protection of people who have not agreed to arbitrate. . . . But when the parties are free under the law to agree on some outcome, the arbitrator's decision as their agent does not violate public policy.

13

*Hyatt Franchising, L.L.C.*, 876 F.3d at 903. In this case, public policy would not be a valid ground to challenge the Award, as there are no third parties who did not originally sign the Agreement who would be damaged by any alleged violation of the Illinois Rules of Professional Conduct. *AOT USA v. Merrill Lynch Prof'l Clearing Corp.*, No. 03 C 1513, 2004 WL 415700, at *4 (N.D. Ill. Jan. 28, 2004) ("[T]here is no assertion that anyone, other than AOT, has been affected by the Award. . . . In essence, AOT attempts to magnify its own disappointment in the arbitrators' decision into a matter affecting the public as a whole. Yet, . . . this is merely a private grievance having no real public policy implication. Accordingly, 'violation of public policy' does not form a basis for vacating the Award.") We accordingly find the public policy exception cannot invalidate the Award, even if it Respondents had raised the issue before it was time barred.

## CONCLUSION

For the aforementioned reasons, we hereby grant Petitioners' amended petition, and enter judgment that Respondents Kenneth Elder and G3 Analytics are liable for $233,597.26 in attorneys' fees to Petitioners Hughes and Cohen Law. It is so ordered.

  _____
Honorable Marvin E. Aspen
United States District Judge

Dated: August 28, 2018
      Chicago, Illinois